UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br>　v.<br>HEIDI HAISCHER,<br><br>　　　　　　　Defendant. | Case No. 2:11-cr-00267-MMD-CWH<br><br>ORDER<br><br>(Def.'s Motion for Release Pending Appeal – dkt. no. 148) |

**I.　SUMMARY**

Before the Court is Defendant Heidi Haischer's Motion for Release Pending Appeal. (Dkt. no. 148.) For the foregoing reasons, Haischer's Motion is denied.

**II.　BACKGROUND**

On July 20, 2011, the United States filed an indictment against Haischer alleging that she perpetrated a mortgage fraud scheme in which she, along with her ex-boyfriend, Kelly Nunes, submitted false loan applications to obtain financing for two properties located in Las Vegas, Nevada. The Indictment alleged that Nunes recruited Haischer to act as a straw buyer for the purchase of these two properties, and that they both completed mortgage loan applications containing materially false and fraudulent representations and material omissions. (Dkt. no. 1.)

On November 9, 2012, a jury found Haischer guilty of one count of wire fraud and one count of conspiracy to commit wire fraud. (Dkt. no. 101.) On November 26, 2012, Haischer timely filed her first motion for a new trial seeking to set aside that verdict and

requesting a new trial. (Dkt. no. 102.) The Court denied Haischer's motion. (*See* dkt. no. 107.)

Shortly before sentencing was scheduled, Haischer filed a second Motion for New Trial based on a cognitive functioning exam report that was attached to Defendant's Sentencing Memorandum filed on April 1, 2013. (*See* dkt. nos. 114 & 122.) After holding an evidentiary hearing on the second Motion and a sentencing hearing, the Court denied the Motion and sentenced Haischer to a term of 15 months in custody followed by supervised release. (*See* dkt. nos. 138 and 140.) The imposition of a sentence was delayed pending a restitution hearing set for July 10, 2013. (*See* dkt. nos. 138 and 171.) The Court ordered Haischer to self-surrender to authorities by September 3, 2013.

Haischer brings the instant Motion seeking release pending appeal to the Ninth Circuit Court of Appeals, informing the Court that she intends to seek appeal of a number of different issues that are likely to result in a reversal on appeal. (*See* dkt. no. 148.)

## III. LEGAL STANDARD

Under the Bail Reform Act of 1984, 18 U.S.C. § 3143(b), the Court must detain an individual who has been convicted and sentenced and who has filed an appeal unless the Court finds that the "person is not likely to flee or pose a danger to the safety of any other person or the community" and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result" in reversal, new trial, a sentence that does not include incarceration or a reduced sentence.[1] *See* 18 U.S.C. § 3143(b)(1)(A)–(B). The Ninth Circuit has interpreted the phrase "substantial question" to mean a question that is "'fairly debatable' . . . or 'fairly doubtful'" and includes "questions that are novel or not readily answerable." *United States v. Handy*,

---

[1] Haischer argues that she has made a showing that she is not likely to flee or pose a danger to the safety of others. The government does not challenge Haischer on this point. The Court agrees with Haischer, and discusses only subsection (b)(1)(B).

761 F.2d 1279, 1283 (9th Cir.1985). Thus, to obtain release pending appeal, a defendant does not have to show the appeal will probably result in reversal; the defendant has only to show that the substantial question on appeal is "fairly debatable." "'[S]ubstantial' defines the *level of merit* required in the question presented and 'likely to result in reversal or an order for a new trial' defines the *type of question* that must be presented." *Id.* at 1280.

## IV. DISCUSSION

Haischer raises a number of issues that she characterizes as "fairly debatable" so as to warrant her release pending appeal. The Court disagrees, and discusses each in the order raised by Haischer's Motion.

### A. Evidence of Physical Abuse

Haischer argues that substantial questions exist as to whether evidence of Haischer's physical abuse was relevant to the jury's assessment of her deliberate ignorance, and whether that evidence was erroneously excluded pursuant to Fed. R. Evid. 403.

As explained in previous rulings, the Court ruled that although evidence of physical abuse was marginally relevant to Haischer's *mens rea* defense, its probative value was substantially outweighed by the risk of unfair prejudice. (*See* dkt. no. 107 at 4–5.) The Court determined that in the absence of a duress defense, the relatively low probative value of physical abuse evidence was "far outweighed" by the forms of prejudice listed in Rule 403. (*See id.* at 5.) Because the resolution of this question is not "fairly debatable," it cannot serve as the basis for Haischer's release pending appeal.

Haischer was afforded extensive opportunity to present evidence to the jury that Kelly Nunes' coercive and manipulative relationship led to her inability to appreciate the wrongfulness of her conduct. (*See* dkt. no. 144 at 479:23-25 ("As for the witnesses who are going to testify, they certainly can testify as to the dynamics of the relationship between Miss Haischer and Mr. Nunes that they observed.").) She presented four witnesses ─ Doris Mitchell, James Barger, Sean Claggett, and Penny Haischer ─ who all

testified as to Haischer's inability to appreciate the complexities of the loan applications she signed and her fraudulent conduct. They further testified as to Mr. Nunes' manipulative and abusive personality, including the witnesses' perceptions of Haischer and Mr. Nunes' relationship dynamics, as well as specific instances of Mr. Nunes' verbal abuse of Haischer. Indeed, the Court allowed Mr. Nunes himself to testify, presumably for the limited purpose of allowing the jury to appreciate Mr. Nunes' demeanor and physical appearance. (*See* dkt. no. 144 at 631.) The only evidence disallowed by the Court was specific testimony and documentary evidence concerning physical and mental abuse, which the Court deemed prejudicial and likely to result in confusion and unnecessary delay. The government, in response, presented evidence that Haischer did, in fact, appreciate the wrongfulness of her conduct, and argued that Haischer's excuses were incredible. The jury resolved this dispute against Haischer. Including specific evidence of physical abuse would have been largely cumulative of the evidence presented at trial, would have added little more than mere emphasis to a host of testimony presented by various witnesses in support of Haischer, and had little probative value for Haischer's defense. For this reason, Haischer's citation to *United States v. Heredia*, 483 F.3d 913, 920 (9th Cir. 2007) is inapposite. The question is not whether evidence of coercion, exigent circumstances, or lack of meaningful choice is relevant *generally* to a "deliberate ignorance" instruction, but whether the exclusion of only the evidence of physical abuse in favor of the admission of all other evidence described above was in error and the subject of fair debate. The Court holds that it was not. Since a district court's evidentiary decisions are afforded "wide latitude," Haischer's physical abuse argument does not raise a substantial question susceptible to fair debate. *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

### B. Evidence of Deliberate Action

Haischer also represents to the Court that she plans to appeal the Court's instruction of the jury on deliberate ignorance, arguing that no evidence existed in the record to include that instruction. However, she failed to argue how this issue is "fairly

debatable," leaving the Court to guess as to its position for supporting release pending appeal. This is improper. *United States v. Montoya*, 908 F.2d 450 (9th Cir. 1990) ("However, counsel does not tell us what the basis for the argument is. There is thus no way that we can evaluate whether the argument appellant intends to present is fairly debatable."). Nevertheless, Haischer cannot raise any serious doubt as to the existence of evidence supporting a deliberate indifference instruction. "A deliberate ignorance instruction, sometimes called a *Jewell* instruction, is appropriate only when the defendant purposely contrives to avoid learning all the facts, as when a drug courier avoids looking in a secret compartment he sees in the trunk of a car, because he knows full well that he is likely to find drugs there." *United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir. 1992) (*citing United States v. Jewell*, 532 F.2d 697, 698–99 (9th Cir. 1976) (en banc)). "The instruction enables the jury to deal with willful blindness, where a person suspects a fact, realizes its probability, but refrains from obtaining final confirmation in order to be able to deny knowledge if apprehended." *Id. United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir. 1992). Some deliberate action is required, and not merely recklessness. *Id.* (*citing United States v. Kelm*, 827 F.2d 1319, 1324 (9th Cir. 1987)). Here, enough evidence in the record supported the instruction. Haischer specifically testified that she did not read the loan documents, but the documents introduced at trial included her signature on numerous pages. The government presented evidence that her prior experience in the industry allowed her to understand the mortgage process and appreciate the wrongfulness of her conduct. As a result, the jury was entitled to credit both facts, which would be tantamount to a finding that Haischer deliberately avoided reading the documents notwithstanding her realization that they were probably fraudulent. Therefore, no debatable argument exists as to the validity of the Court's instruction in this regard.

**C.     Cognitive Functioning Exams**

Haischer also points to the Court's decision not to order a new trial after a doctor evaluated Haischer's cognitive functioning after the jury's verdict. Again, she fails to

argue that the Court's conclusion was open to fair debate, instead merely informing the Court that she intends to raise it on appeal. Once more, even if the Court overlooks this error, it must come to the indisputable conclusion that its decision not to order a new trial cannot be the basis for release pending appeal under § 3143(b). The Court rejected Haischer's (second) attempt to secure a new trial on the basis of this report, holding that the report added little to numerous statements introduced at trial that described Haischer as unable to appreciate the complexities of the mortgage application process. (*See* dkt. no. 140 at 3-5.) Haischer has not demonstrated that this issue is one susceptible to fair debate. It is not a "novel" question, and is "readily answerable." *See Handy*, 761 F.2d at 1283.

### D. Foreseeability of the Loan Servicers' Conduct

Lastly, Haischer seeks to appeal the issue of whether the government sustained its burden of proof to show that the actions of the loan servicers in delaying the sale of the subject properties were reasonably foreseeable to the defendant. Haischer argues that the government did not present proof on the issue of foreseeability, and that a favorable decision on appeal would reduce the sentence far less than the two years that an appeal would take and might not include a term of imprisonment at all. However, the Court rejected this argument at the sentencing hearing, finding no evidence that the servicers of the two properties at issue engaged in deliberate delay. There is therefore no debate on this issue, for Haischer presented no evidence to support her foreseeability argument.

## V. CONCLUSION

Accordingly, Defendant Heidi Haischer's Motion for Release Pending Appeal (dkt. no. 148) is DENIED.

DATED THIS 13th day of June 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE